**Joseph DICKINSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 26, 2010.**

Supreme Court of Delaware.

Submitted: Sept. 29, 2010.
Decided: Dec. 8, 2010.

**58.** *Jones,* 551 A.2d at 64.

Court Below: Superior Court of the State of Delaware, in and for New Castle County, Cr. No. 09012009990A.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant.

Paul R. Wallace, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this criminal appeal, we address the question left undecided in *Erskine v. State*[1]—whether the trial court must give a jury instruction on an accomplice's level of liability if there is a basis for such an instruction, but neither party requests it. By statute, accomplice liability must be based on the accomplice's own mental state and accountability for an aggravating factor. Thus, in appropriate circumstances, an accomplice may be found guilty of less serious offenses than the principal defendant. But accomplices do not always ask for an accomplice liability jury instruction. Trial courts recognize the parties' autonomy, and do not interfere with their strategic decisions. Accordingly, we conclude that no accomplice liability instruction should be given unless it is requested by either party.

**Factual and Procedural Background**

In January 2009, a confidential informant told Wilmington Police Detective Paul Ciber that Oscar Johnson was planning to commit a robbery. Because Johnson had not selected the location of the robbery, Ciber and other police officers rented a room at the Fairview Inn and set it up to look as if the occupant was a drug dealer. The informant called Johnson and told him a drug dealer was working out of that room, and that the dealer had $25,000. Johnson told the informant to pick him up. Then Johnson called two friends, Charles Thomas and Joseph Dickinson, to join in the planned robbery. Johnson, the confidential informant, Thomas and Dickinson drove in two cars to Haynes Park, where they discussed the plan. Dickinson drove Johnson and Thomas to a salvage yard next to the Fairview Inn, and the confidential informant drove into the hotel parking lot. Dickinson positioned his car facing Route 13 and waited while Johnson and Thomas, carrying Dickinson's shotgun, put on ski masks and walked to the designated room. At about the time that they realized there was nothing to take, a SWAT team arrived and threw a flash grenade. Dickinson saw the flash and tried to drive away, but he was arrested at the scene. When the police searched Dickinson's car, they found shotgun shells and the bag used to carry the shotgun.

Dickinson did not testify at trial. He argued that Thomas and Johnson were the ones who committed the crimes and that they testified against Dickinson in return for their pleas. Dickinson did not ask for an accomplice liability instruction. Instead, he asked for an instruction that accomplices' testimony should be viewed with extreme caution. The jury found Dickinson guilty of first degree attempted robbery, second degree burglary and relat-

1. 4 A.3d 391 (Del.2010).

ed charges. Dickinson was sentenced as an habitual offender to life in prison. This appeal followed.

## Discussion

Dickinson's only argument is that the trial court committed plain error by failing to give the jury an accomplice liability instruction *sua sponte.* Dickinson was charged with attempted first degree robbery and second degree burglary as an accomplice. As we explained in *Erskine,* an accomplice may be guilty of a less serious offense than the other participants in a crime:

> An accomplice "is guilty of an offense committed by another person when ... intending to promote or facilitate the commission of the offense the [accomplice] ... aids ... or attempts to aid the other person in ... committing it...."

> \*      \*      \*

Under 11 *Del. C.* § 274, if two or more people are liable for "an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance...."[2]

Here, there was a factual basis in the record to support a finding that Dickinson was guilty of attempted second degree robbery and third degree burglary. He did not ask for a § 274 "level of liability" jury instruction, however, and he was convicted of the offenses as charged.

For strategic reasons, defendants sometimes take an "all or nothing" approach to their defense. They maintain that they were not there, or had nothing to do with the criminal activity, and should be found not guilty. The accomplice "level of liabili-

ty" instruction acts like a lesser-included offense instruction—it gives the jury a middle ground on which to find the defendant guilty. This Court has held that lesser-included offense instructions should not be given unless requested:

> In Delaware, ... the trial judge does not consider whether there is a rational basis in the evidence to instruct the jury on a lesser-included offense "unless requested to do so by a party." Under this "party autonomy" approach, the burden is initially on the parties, rather than the trial judge, to determine whether an instruction on a lesser-included offense should be considered as an option for the jury. The trial judge should not give an instruction on an uncharged lesser offense if neither side requests [it] because to do so would "interfere with the trial strategies of the parties."[3]

For the same reasons, accomplice "level of liability" instructions should not be given unless requested.

In this case, it is apparent that Dickinson made a strategic decision not to request the accomplice "level of liability" instruction. Both his opening and closing statements emphasized that Johnson and Thomas were not credible witnesses—they would say anything to get their plea bargains. Dickinson pointed out that he did not leave his car and go to the motel room with Johnson and Thomas. He did not even park his car in the motel parking lot. Dickinson did give Johnson and Thomas a ride, but he argued that he believed his friends were planning on buying drugs. In sum, Dickinson took an "all or nothing" approach. He tried to convince the jury that he was an innocent bystander, and not guilty of any level of offense.

---

**2.** *Id.* at 394 (Citations omitted).

**3.** *State v. Brower,* 971 A.2d 102, 107 (Del. 2009) (Citations omitted.).

In other cases, it might not be as apparent that the failure to request an accomplice "level of liability" instruction was a strategic decision. A more complete trial record would eliminate any question on this point. Accordingly, we urge the Superior Court, as a routine matter, to ask the parties, during the prayer conference, whether they have considered, and decided against, requesting an accomplice "level of liability" instruction.

### Conclusion

Based on the foregoing, the judgments of the Superior Court are hereby affirmed.